IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GRACE C. BAUMGARTEN,

    Plaintiff,

  v.

CALIFORNIA BOARD OF EQUALIZATION, and CALIFORNIA STATE EMPLOYEES' ASSOCIATION, SEIU LOCAL 1000,

    Defendants.

No. C 05-05221 WHA

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this action for discrimination and retaliation under Title VII, both defendants now move for summary judgment as to all of plaintiff's claims under FRCP 56(c). Defendants have shown that some of plaintiff's claims were either dismissed in prior actions or are barred by statutes of limitations. As to the remainder of plaintiff's claims, defendants have shown that there are no triable issues of fact and that summary judgment is warranted. Accordingly, defendants' motions for summary judgment are **GRANTED**.

**STATEMENT**

Plaintiff *pro se* Grace Baumgarten, a Filipino woman, was employed by defendant California Board of Equalization as a tax technician from September 1987 until April 2005 (Cattermole Decl. Exh. C, 28:2–11). She began working in the audit department on October 11, 2001 (*id*. at Exh. D). Defendant California State Employees Association SEIU Local 1000 is a

recognized employee organization under the Ralph C. Dills Act, California Government Code Sections 3512 *et seq.* It is the exclusive representative of its members under the collective bargaining agreement (Shipley Decl. ¶ 2). Baumgarten was a member of SEIU while employed by the BOE (*id*. at ¶ 3).

*Baumgarten's Complaints with the EEOC and DFEH*.

Since 2002, Baumgarten has filed a number of complaints with the Equal Employment Opportunity Commission and the Department of Fair Employment Housing. In 2003, plaintiff filed a complaint with the State Personnel Board and alleging that she had been denied a promotion on two occasions because of her ethnicity (Shipley Decl. Exh. A, 98:3–11). SEIU represented her at the hearing, but Baumgarten's claim was denied for lack of credible evidence (*id*. at Exh. C). Baumgarten asked SEIU to be her counsel for a lawsuit under Title VII. SEIU declined to represent her after an internal review (Shipley Decl. Exh. D). In response, Baumgarten filed an unfair practice charge against SEIU with the Public Employment Relations Board (*id*. at Exh. A 111:12–112:10). It was dismissed on November 12, 2003 (*id*. at Exh. F). Plaintiff's retaliation claim against SEIU appears to be based in part on this denial of representation and subsequent unfair practice charge.

At issue in this action are three complaints that Baumgarten filed with the EEOC and DFEH. At various times, she requested representation from SEIU in connection with them.

The first of these was filed with the DFEH on June 4, 2004, and the EEOC on July 9, 2004. It alleged that in April 2002, plaintiff was denied a training-and-development assignment to an auditor position because of her race and ethnicity and in retaliation for her earlier complaints about discrimination (Cattermole Decl. Exh. T). At the hearing on this motion, plaintiff stated that she had made several requests to be allowed to take classes in financial accounting to become qualified for another position. According to BOE, training-and-development assignments were made when an employee was assigned to a position for which they were not yet qualified but could later become qualified through classes outside work and on-the-job training (*id*. at Exh. V). They would happen only when management saw a compelling need for them and when there was a vacant position (*ibid*.). The BOE decided that

1  plaintiff's complaint had no merit because she did not prove that she met the qualifications for a
2  training-and-development assignment and there was no compelling management need (*ibid*.).
3  The DFEH issued plaintiff a right-to-sue letter on January, 6, 2005; the EEOC issued a right-to-
4  sue letter on January 25, 2005 (*id*. at Exh. W, X).

5        Plaintiff's second complaint was filed with the EEOC on October 20, 2004 (*id*. at Exh.
6  Y). She alleged that she was denied a promotion to a business and tax representative position
7  because of discrimination and retaliation, and that she was harassed by Equal Employment
8  Office manager Doris Dominey on August 9, 2004 (*ibid*.). When questioned about the alleged
9  incident in her deposition, plaintiff testified that she called Dominey to ask about the promotion
10 she had been recently denied. Baumgarten declined to leave her name because she wished to
11 remain anonymous. She testified that Dominey claimed to know it was her, and Dominey said
12 repeatedly that she was not qualified for that position. When asked if Dominey had done
13 anything else to her, Baumgarten replied "Doris Dominey did a lot of things to me" (Shipley
14 Decl. Exh. A 193:4–196:9). No more testimony regarding this incident or other incidents with
15 Dominey appears in her deposition. In her opposition, Baumgarten claims that Dominey
16 harassed her but does not give any further particulars.

17       BOE responded to Baumgarten's complaint and said that the promotion process was
18 proper with respect to her (*id*. at Exh. Z). Her contact with Dominey was investigated by
19 BOE's Internal Security and Audit Division, but plaintiff did not wish to be interviewed in
20 connection with the investigation (*ibid*.). Baumgarten stated at the hearing that she chose to
21 write a letter to regarding the incident. Plaintiff testified in her deposition that she had an
22 anxiety attack because of her phone conversation with Dominey which rendered her unable to
23 work (*id*. at Exh. E). She returned to work briefly on September 8, 2004, but has not worked at
24 BOE since then. The EEOC issued Baumgarten a right-to-sue letter on March 29, 2005 (*id*. at
25 Exh. AA).

26       Baumgarten filed her third complaint on April 28, 2005 (*id*. at Exh. BB). In it, she
27 alleged that BOE denied her an educational leave of absence in retaliation for making
28 complaints of discrimination (*ibid*.). She stated that she was having difficulties receiving

3

1  training, and had requested to take daytime classes in financial accounting as far back as 2002
2  (*ibid*).  A BOE investigation followed.  It concluded that plaintiff was merely attempting to
3  justify her lengthy absence from work (*id*. at Exh. CC).  The EEOC issued Baumgarten a right-
4  to-sue letter on September 26, 2005 (*id*. at Exh. DD).

*Baumgarten's Work at BOE*

As mentioned above, on August 9, 2004, Baumgarten had an anxiety attack after arguing on the telephone with BOE Equal Employment Officer Doris Dominey (*id*. at Exh. E).  She left work that day, but attempted to return on September 8, 2004 (*ibid*.).  After suffering another anxiety attack, she left work again (*id*. at Exh. F).  Defendants characterize her return to work as a brief stop to fill out time sheets.  Plaintiff stated that her supervisor Barbara Lee harassed her when she returned to work on September 8, 2004 (Opp. 16).  Baumgarten never made an official complaint related to her dealings with Lee and has not presented any evidence, aside from her own allegation, that Lee harassed her.  She was placed on non-industrial disability leave from August 9, 2004, through January 30, 2005 (Cattermole Decl. Exh. F).

Sometime in January 2005, plaintiff wrote to her supervisor, Barbara Lee, requesting "an indefinite leave of absence" without indicating its purpose (*ibid*.).  At the hearing on this motion, Baumgarten stated that she had gone to her office on January 28, 2005, to retrieve her personal items.  She said that she spoke with her supervisor at that time about requesting an extended leave of absence because she had suffered another anxiety attack on January 26, 2005.  Lee sent Baumgarten a letter dated January 28, 2005, which explained her options and stated that BOE would consider her request once she produced a doctor's note saying she was unable to work (*id*. at Exh. G).  Baumgarten said that she had misplaced that letter but had later requested that Lee send her another copy.  After that, Lee sent Baumgarten two additional letters on February 10, and February 15, 2005 telling her that she needed to select a type of leave and produce evidence to qualify for it (*id*. at Exh. K).  Baumgarten testified in her deposition that she may not have paid attention to the letter because she did not intend to go on medical leave (Shipley Decl. Exh. A, 126:3–22).  Plaintiff wrote a letter with no accompanying documentation to BOE dated February 24, 2005, requesting an educational leave of absence (*id.*

4

at Exh. L). She also stated that she did not feel she was able to return to work because her work environment was too stressful. She feared having another anxiety attack (*ibid*.). At the hearing, she said she had chosen to request an educational leave of absence because it was part of BOE's upward mobility program.

District Administrator Wolfgang Liebelt denied plaintiff's request for leave on March 25, 2005 (*id*. at Exh. G). She was ordered to return to work on April 4, 2005, or produce justification for her absence from work (*ibid*.). The deadline was extended to April 18, 2005, per plaintiff's request (*id*. at Exh. N). Baumgarten did not report for work, nor did she produce documentation (*id*. at Exh. O).

On April 22, 2005, BOE invoked California Government Code Section 19996.2, the "AWOL statute," which states that any employee absent for five consecutive working days is considered to have tendered an automatic resignation. An informal *Coleman* hearing was scheduled for May 4, 2005. State agencies terminating employees under the AWOL statute must give the employee an opportunity to respond at a hearing. *Coleman v. Dep't. Personnel Admin.*, 278 Cal. Rptr. 346 (1991). Plaintiff did not attend (*id*. at Exh. S). She filed an appeal with the Department of Personnel Administration, but it was deemed withdrawn on October 4, 2005 because of plaintiff's failure to attend the appeal hearing or adequately explain her absence (BOE Req. Jud. Not. Exh. D).

*Baumgarten's Requests For Representation By SEIU*.

Baumgarten wrote to SEIU on January 22, 2005, asking for assistance and representation in a claim for discrimination against BOE (Shipley Decl. Exh. G). This was at approximately the same time plaintiff requested an extension of leave from BOE. Ann Giese, an SEIU attorney wrote a letter dated February 28, 2005, asking Baumgarten for more information (*id*. at Exh. I). Baumgarten wrote an additional letter to SEUI in response to BOE's request that she designate a type of leave and provide documentation (Shipley Decl. Exh. L). Jennie Roitman, a lead labor relations representative, called Baumgarten upon receiving the letter and urged her to get medical documentation for her leave (Roitman Decl. ¶ 3–4). As stated above, Baumgarten responded to BOE by requesting an educational leave of absence.

5

Baumgarten notified the union of BOE's intent to invoke the AWOL statute against her on April 29, 2005, and asked for representation at her *Coleman* hearing (Shipley Decl. Exh. O). Against SEIU's advice, Baumgarten declined to see her doctor and get medical verification of her inability to work (*id*. at Exh. P). She stated that she did not want to appear at the hearing for fear of having another anxiety attack (*id*. at Exh. A 134–136). She did say that she was willing to give SEIU what documents she had if they would represent her (*id*. at 9–12). Roitman agreed to attend the hearing without Baumgarten (Roitman Decl. ¶ 6).

Shortly thereafter, Baumgarten asked Roitman to cancel the hearing (*id*. at ¶ 7). Roitman and her manager, Carrie Cianchetti, called Baumgarten to explain to her that the hearing would likely be her last and best opportunity to save her job (*id*. at ¶ 8). Plaintiff stated her intention to pursue her claim through an appeal (*ibid*.). On May 6, 2005, Roitman sent Baumgarten a letter outlining her remaining options and relevant deadlines (Shipley Decl. Exh. S). As mentioned above, Baumgarten's termination was sustained, and her appeal was denied because of her failure to appear at the appeal hearing.

In June 2005, union attorney William Heath contacted Baumgarten about her earlier letter regarding her discrimination complaints (*id*. at Exh. U). He wrote an additional letter to plaintiff dated July 5, 2005, again asking her for information about her discrimination complaint (*id*. at Exh. V). She responded by saying that she was not capable of responding to requests for information because she was still recuperating (*id*. at Exh. W). Heath asked her to send a copy of her complaint, which she did approximately two weeks later (*id*. at Exh. X, Y). Heath denied plaintiff's request for representation in a letter dated September 6, 2005, because her case lacked merit. There was no evidence of a causal connection between plaintiff's protected activities and an adverse employment action taken against her (*id*. at Exh. W). Specifically, he pointed out that the employer had a valid, non-discriminatory reason for denying her request for educational leave (*ibid*.).

On June 8, 2006, plaintiff filed a complaint with the EEOC alleging that SEIU had discriminated against her by denying her representation (*id*. at Exh. AA). In it, she alleged that a Filipino co-worker, Leonora Reyes (now Fesilda), was advised by SEIU attorney Linda

6

Shipley to not testify at a hearing and to not pursue her discrmination complaint (*ibid*.). Fesilda now declares that SEIU represented her at a hearing regarding an adverse employment action, and she eventually settled the complaint with SEIU's assistance (Fesilda Decl. ¶¶ 5–8). She would have preferred a better result, but does not believe that she would have gotten one had she pursued her claim further (*id*. at ¶ 8).

*Procedural History*

Plaintiff first filed her complaint against BOE on December 16, 2005, alleging that it had violated her rights under Title VII of the Civil Rights Act of 1964. Baumgarten applied to proceed *in forma pauperis*, her application was denied on December 22, 2005. She then filed a motion for the appointment of counsel. It was denied on January 23, 2006, because plaintiff had not shown that she was unable to pay for an attorney. The complaint was finally served on BOE on March 24, 2006. Shortly thereafter, plaintiff filed a first amended complaint on April 4, 2006, which BOE answered on April 17, 2006. Plaintiff filed a second amended complaint on the day BOE answered which joined SEIU as a defendant. An order dated April 25, 2006, allowed plaintiff to file a third amended complaint, which she did on April 26, 2006. SEIU filed a motion to dismiss for lack of jurisdiction and failure to state a claim on May 10, 2006. In the meantime, plaintiff was allowed several opportunities to file exhibits to her complaint. SEIU's motion was finally denied on July 16, 2006.

Plaintiff third amended complaint alleged that BOE discriminated and retaliated against her in violation of Title VII and that SEIU discriminated and retaliated against her by failing to represent her in her claims against the Board. Both defendants filed motions for summary judgment on December 6, 2006, and the hearing was intially set for January 11, 2007. According to the case management scheduling order, the last day to file dispositive motions was December 7, 2006. Baumgarten asked for and received a one-week extension in which to file her opposition to defendants' motions. With the extension, her oppositions were due on December 28, 2006. Plaintiff did not file anything with the Court until January 5, 2007, at which time she asked for leave to file a late opposition. Such leave was granted. In violation of our local rules, her opposition to the Board's motion ran to 28 single-spaced pages, while her

7

opposition to SEIU's motion was 35 single-spaced pages. Both briefs include many references to Baumgarten's past complaints going back as far as 1996. The trial date is February 26, 2007, but will not occur inasmuch as summary judgment is required in favor of defendants.

**ANALYSIS**

Summary judgment should be granted where the pleadings, discovery, and affidavits show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023–24 (9th Cir. 2004). Once the moving party has met its initial burden, the nonmoving party must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citation omitted).

In the Ninth Circuit, "there is a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). "'[W]e require very little evidence to survive summary judgment' in a discrimination case, because the ultimate question is one that can only be resolved through a 'searching inquiry' – one that is most appropriately conducted by the factfinder, upon a full record.'" *Ibid.* (quoting *Lam v. University of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994)).

Both defendants now move for summary judgment. BOE moves for summary judgment as to claims regarding her application for promotion to the position of business tax representative and training-and-development position. BOE also argues that plaintiff has failed to establish a prima facie case for retaliation and discrimination concerning her termination and the denial of her request for educational leave. SEIU moves for summary judgment as to plaintiff's claim that SEIU discriminated against her by breaching duty of fair representation,

8

plaintiff's claim that SEIU failed to prevent BOE's alleged discrimination, and her retaliation claim against SEIU for not representing her.

### 1. PLAINTIFF'S CLAIMS BASED ON FAILURE TO PROMOTE AND FAILURE TO APPOINT HER TO A TRAINING AND DEVELOPMENT POSITION.

In her third amended complaint, plaintiff appears to allege that BOE failed to promote her in April and July 2001, and again in August 2004, because of her race. She also alleges that BOE failed to assign her to a training-and-development position in April 2002. BOE argues that these claims are barred by *res judicata* and the applicable statute of limitations.

#### A. *Res Judicata*.

The doctrine of *res judicata* applies when the earlier action (1) reached a final judgment on the merits; (2) involved the same claim; and (3) involved identical parties or their privies. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006). On June 25, 2003, plaintiff filed a complaint against BOE in federal court alleging that she was not promoted because of her race in 2001 (BOE Req. Jud. Not. Exh. A). It was dismissed with prejudice on August 7, 2003, per plaintiff's request (BOE Req. Jud. Not. Exh. B). A final judgment was reached on the merits, and it involved the same claim and involved identical parties, Baumgarten and BOE. Summary judgment is appropriate as a matter of law on this claim.

#### B. Statute of Limitations.

"Title VII discrimination actions cannot be filed in federal court unless a charge of discrimination has first been filed with the EEOC." *E.E.O.C. v. Dinuba Med. Clinic*, 222 F.3d 580, 585 (9th Cir. 2000). In California, charges under Title VII filed with the DFEH are deemed constructively filed with the EEOC. *McConnell v. General. Tel. Co. Of California*, 814 F.2d 1311, 1315–1316 (9th Cir. 1987). Charges must be filed with the EEOC within 300 days after the alleged unlawful employment act, or 30 days after notice that the state agency has terminated state-law proceedings, whichever is earlier, otherwise the complaint is barred by the statute of limitations. 42 U.S.C. 2000e-5(e)(1). After receiving a right-to-sue letter from the EEOC, the plaintiff has 90 days in which to file a complaint in federal court. 42 U.S.C. 2000e-5(f)(1). Failure to commence suit within the 90-day period is grounds for dismissal of the action. *Gonzalez v. Stanford Applied Engineering, Inc.*, 597 F.2d 1298, 1299 (9th Cir. 1979).

9

Plaintiff filed a charge of discrimination and retaliation with the EEOC and DFEH on October 20, 2004, alleging that she was denied promotion to the position of Business Tax Representative in August 2004. It is undisputed that she received a right-to-sue letter on March 25, 2005. Also undisputed is that plaintiff filed the instant action on December 16, 2005, nearly eight months later. This claim is barred by the statute of limitations.

Plaintiff filed an additional charge of discrimination and retaliation on June 4, 2004, with the EEOC and on July 9, 2004, with the DFEH. This complaint was based on BOE's failure to appoint her to a training-and-development position in April 2002. Plaintiff does not dispute that she was issued a right-to-sue letter on January 6, 2005, by the DFEH, and January 25, 2005, by the EEOC. She filed this action long after the 90-day statute of limitations had tolled. Accordingly, summary judgment is appropriate as a matter of law with respect to plaintiff's claims based on failure to promote in 2001 failure to be assigned to a training-and-development position. BOE's motion for summary judgment as **GRANTED** with respect to these claims. Plaintiff's complaints about failure to promote and failure to grant her a training-and-development assignment cannot form the basis of any of plaintiff's other claims.

**2.    PLAINTIFF'S RETALIATION CLAIM BASED ON AUTOMATIC RESIGNATION.**

Plaintiff next argues that BOE retaliated against her by invoking the AWOL statute. To establish a prima facie case of retaliation, plaintiff must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." *Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1196–1197 (9th Cir. 2003). If plaintiff establishes a prima facie case, then the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the decision. If defendant can articulate a legitimate, nondiscriminatory reason, the burden shifts back to plaintiff show that defendant's proffered reason was merely pretextual. *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003).

"Protected activity includes the filing of a charge or a complaint, providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to oppose an employer's discriminatory practices." Plaintiff must also make some

10

showing that would allow a reasonable trier of fact to infer that defendant was aware that the plaintiff had engaged in protected activity. *Raad*, 323 F.3d at 1197.

Defendant wisely does not argue that plaintiff did not engage in protected conduct. Indeed, from the voluminous exhibits she filed with her oppositions, it would appear that Baumgarten has written many letters and made numerous complaints to various people within and without the BOE. A number of these were complaints that she and other Filipino employees were being discriminated against. Others include general grievances against state anti-discrimination policies as plaintiff described at the hearing on this motion. Similarly, plaintiff was terminated, which is an adverse employment action.

The crux of BOE's argument is that Baumgarten has not shown any causal connection between her complaints about discrimination and BOE's invocation of the AWOL statute. She does no more than assert that since she was terminated, it must have been in retaliation for her complaints. She does not identify any statements made at BOE regarding her race or her complaints about discrimination. Causation can sometimes be inferred from proximity and timing. *Passantino v. Johnson & Johnson Prods., Inc.*, 212 F.3d. 493, 507 (9th Cir. 2000). It is undisputed, however, that plaintiff had not been to work for several months before BOE invoked the AWOL statute. Plaintiff simply has not met her burden, small as it is, of showing a causal connection between her complaints and her termination.

Additionally, BOE articulated a legitimate, non-discriminatory reason for terminating Baumgarten. The AWOL statute, California Government Code Section 19996.2, states that employees who are absent without leave for five consecutive working days are deemed to have automatically resigned effective the last date the employee worked. Plaintiff does not dispute that she last worked September 8, 2004. She does not dispute that her non-industrial disability leave expired as of January 29, 2005. She also does not dispute that BOE requested that she return to work or provide justification for her absence by April 5, 2005. This date was extended to April 18, 2005 per her request. She does not dispute either that BOE gave her notice of her right to a hearing regarding her termination. In short, BOE terminated her for a legitimate non-discriminatory reason and gave her ample notice and opportunity to challenge her automatic

11

resignation. Defendant BOE has shown that there are no triable issues of fact here, thus summary judgment is appropriate. BOE's motion is **GRANTED** on Baumgarten's claim for retaliation.

### 3. PLAINTIFF'S CLAIMS AGAINST BOE FOR FAILURE TO GRANT HER REQUEST FOR EDUCATIONAL LEAVE.

Plaintiff next argues that BOE discriminated against her by not granting her request for educational leave and later retaliated against her based on her complaint by firing her. Title VII discrimination claims are analyzed under a burden-shifting analysis. The plaintiff has the initial burden of showing a prime facie case of discrimination. The burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the action. Plaintiff may then show that the employer's reason is pretextual; if plaintiff does this, the only thing she need prove is discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805 (1973).

#### 1. Prima Facie Case.

To establish a prima facie case of discrimination under Title VII, the plaintiff is required to show that:

> (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably.

*Bergene v. Salt River Project Agr. Imp. and Power Dist.*, 272 F.3d 1136, 1140 (9th Cir. 2001).

As a Filipino woman, plaintiff belongs to a protected class. BOE has never alleged or argued that before Baumgarten stopped working, she was not performing up to the employer's standards.

The parties part company at the third element. Baumgarten seems to be arguing that BOE's denial of her request for educational leave was an adverse employment action. BOE's leave policy makes clear that educational leave is discretionary and is based in large part on BOE's operational needs and the relative workloads of its employees. At the hearing, plaintiff mentioned she had asked permission to take classes in finance and accounting several times throughout her career. There is no evidence, however, that Baumgarten or any other BOE

12

employee was ever entitled to educational leave, so this cannot be considered an adverse employment action.

As to the fourth element, plaintiff did not present any evidence that any other employees were given educational leave. She argues in her briefs that she had asked to take time off from work to take classes several times since 2001, and that her requests were repeatedly ignored or denied. She also states in conclusory fashion that an unidentified Caucasian woman was given a training-and-development assignment in 2003 or 2004, while Baumgarten was denied such an assignment. Baumgarten does not present any other evidence, nor does she explain why she cannot identify this person. Even if Baumgarten could show evidence that another employee received more favorable treatment, her discrimination claim based on the training-and-development assignment is barred by the statute of limitations. Next, she claims that other employees were allowed to take classes while working. Again, she does not identify them, or give any explanation why she cannot identify them. Viewing the evidence in the light most favorable to plaintiff, she has not shown that even a single BOE employee received more favorable treatment than what she received.

**2.      Legitimate, Non-Discriminatory Reason.**

BOE presents evidence that it had a legitimate, non-discriminatory reason to deny Baumgarten's request. Under the board's leave policy, educational leave is a permissive leave of absence (Cattermole Decl. Exh. M). The following factors are considered in approving a permissive leave of absence: the employee's intention to return, the effect on operations, the purpose and length of the leave, the feasibility of filling the position during leave, and the employee's service record and length of service (*ibid*.). The employee is also required to provide substantiation to support any request for unpaid leave. Here, plaintiff submitted a letter that merely asked for educational leave without saying what her intention was with regard to it. In fact, her letter largely discusses her medical conditions, not her intent to take classes (*id*. at Exh. L). On March 25, 2005, supervisor Wolfgang Liebeldt denied plaintiff's request based on her long absence from work, workload obligations, and BOE's operational needs. Pursuant to the BOE's leave policy, these are legitimate reasons for denying plaintiff's request.

13

### C. Pretext.

The burden now shifts to plaintiff to show that the reasons for denying her request for leave were pretextual. She makes no showing except to state, *ipse dixit* style, that denial of leave was discriminatory. She seems to argue that she had worked at BOE for 17 years, so they should have known of her qualifications and given her educational leave. Baumgarten also stated at the hearing that the state government was simply not addressing racial discrimination in its employment practices and was not responding to complaints. She did not present evidence to support her assertions. This is simply not sufficient. Additionally, plaintiff's reasons for requesting leave shifted over time, and BOE was well aware of plaintiff's attempts to extend her leave of absence. The standard at summary judgment for employment cases is admittedly low, however, plaintiff's unsupported allegation is not sufficient to show a triable issue of fact. Accordingly, summary judgment is appropriate.

Plaintiff also appears to be claiming that BOE retaliated against her for asking for educational leave. Under the test set out in *Raad*, even if plaintiff's asking for leave were protected conduct, BOE still has shown a legitimate non-discriminatory reason for denying her request. As stated previously, educational leave is discretionary. BOE's decision to deny Baumgarten's leave was based on the legitimate, non-discriminatory factors set out in BOE's leave policy.

To the extent that plaintiff is arguing that BOE fired her in retaliation for her complaint about denial of educational leave, the same analysis applies as to her retaliation claim based on BOE's invocation of the AWOL statute. Pursuant to the AWOL statute, BOE has shown that they had a legitimate, non-discriminatory reason for terminating her. Plaintiff has presented no evidence that this was pretextual. Thus, this theory of retaliation cannot yield any issues of triable fact. Accordingly, BOE's motion for summary judgment is **GRANTED**.

### 3. PLAINTIFF'S CLAIM AGAINST SEIU FOR DISCRIMINATORY BREACH OF DUTY OF FAIR REPRESENTATION.

SEIU moves for summary judgment as to plaintiff's claim for breach of duty of fair representation.

14

### A. SEIU's Duty of Fair Representation.

"A union breaches its duty of fair representation only when its conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985) (internal citation omitted). The duty of fair representation derives from the union's role as the employees' exclusive representative in matter related to the collective bargaining agreement. Accordingly, where the union does not exclusively represent its members against the employer, it does not have a duty to represent them. *Archer v. Airline Pilots Ass'n.*, 609 F.2d 934, 939 (9th Cir. 1979), *cert. denied,* 446 U.S. 953 (1980). The union's members determine the scope of the duty of representation for non-contractual employment matters. Outside this, members may pursue claims on their own behalf. *Greene v. Pomona Unified Sch. Dist.*, 32 Cal. App. 4th 1216, 1222-1223 (1995).

SEIU explicitly has a policy in place regarding circumstances where it must commit resources to representing its members in court (Shipley Decl. Exh. B). SEIU is required to deny representation in all cases that lack merit. This was the reason cited by SEIU attorney William Heath in denying Baumgarten's request for representation. Specifically, he cited her failure to appear at her *Coleman* hearing, and that there simply was no evidence of discriminatory animus in any of the BOE's decisions regarding her employment. Additionally, he agreed that BOE had a legitimate, non-discriminatory reason for denying her request for educational leave.

### B. Discrimination.

Baumgarten could still prevail if she could show that SEUI's decision that her claim lacked merit was itself based on some discriminatory motive, *i.e.*, that there was a causal connection between plaintiff's race and SEIU's denial of representation. Again, plaintiff's argument seems to be that she was denied representation, therefore it must have been on the basis of her race or ethnicity. Indeed, in her deposition, she testified that no mention had been made by SEIU of her race, or the race of any other employee (Shipley Decl. Exh. A 173:9–15).

Baumgarten also testified that she believed that SEIU had discriminated against BOE employee Christita Villanueva by refusing to represent her when she did not return to work. In response, SEIU argues that they actually did represent her and negotiated a suspension on her

15

1 behalf when she was facing termination (Shipley Decl. ¶ 6). Plaintiff identified another
2 colleague, Charles Heinz, against whom, she believed, the union had discriminated. At her
3 deposition, she testified that she did not know whether SEIU had actually represented him or
4 not. SEIU now presents evidence that it denied him representation at a hearing, but the SEIU
5 appeals panel awarded him $4,000 to hire his own representative (*ibid.*). Leonora Fesilda,
6 whom plaintiff also identified as being discriminated against, declares now that she *was*
7 represented by SEIU, and that it obtained a better settlement for her than she otherwise would
8 have received (Fesilda Decl. ¶ 9). Finally, Baumgarten alleged that SEIU also discriminated
9 against Jane Manzano, another Filipino employee at BOE. Baumgarten admitted that SEIU
10 represented Manzano and was actually able to get her the promotion she had wanted (Shipley
11 Decl. Exh. A, 184:3–185:12).

12 In short, Baumgarten appears to be arguing that each time a Filipino employee asked
13 SEIU for representation, they were discriminated against regardless of whether the employee
14 got the desired result or not. Her statements are wholly unsubstantiated. They do not show that
15 SEIU refused to represent Filipinos. Nor do they show any discriminatory animus in how SEIU
16 chose to handle complaints. This is simply insufficient to show discrimination.

17 As with her other claims, this is simply not sufficient to show a triable issue of fact
18 where discrimination is concerned. Plaintiff has not stated a *prima facie* case for
19 discrimination, so SEIU's motion for summary judgment is **GRANTED**.

20 **4.     PLAINTIFF'S CLAIM AGAINST SEIU FOR FAILURE TO PREVENT DISCRIMINATION.**

21
22 Plaintiff has also alleged that SEIU failed to prevent discrimination against her. Other
23 circuits have held that a union cannot be held liable for an employer's discrimination without
24 evidence that the union instigated or supported the discrimination, or prevented the employer
25 from fulfilling its statutory duties to prevent discrimination. *Anjelino v. New York Times Co.,*
26 200 F.3d 95–96 (3d. Cir. 2000); *Carter v. Chrysler Corp.*, 173 F.3d 693, 703–704 (8th Cir.
27 1999). The Ninth Circuit has not addressed this question. This order sees no reason to depart
28 from the holdings of the other circuits. The union is the employee's exclusive representative in
matters covered by the collective bargaining agreement. Beyond that, the employee may pursue

16

his own claims and grievances, including with regard to matters such as discrimination, on his own. Since the employee has other avenues for redress, the union should not be liable for not preventing the employer's discrimination unless it was complicit in the employer's acts.

Plaintiff has presented no evidence that SEIU instigated or supported discrimination by the board even assuming such discrimination occurred. Indeed, plaintiff admitted that SEIU offered to represent her at her termination hearing and gave her advice on how to get her job back. SEIU also investigated her complaints, considered her request for representation in this action, and denied it on reasonable grounds. Accordingly, defendant SEIU has shown that there exists no triable issue of fact.

### 5. PLAINTIFF'S RETALIATION CLAIM AGAINST SEIU.

Plaintiff finally claims that SEIU retaliated against her by not agreeing to represent her. She argues that this is based on her complaint to California's Public Employee Relations Board in 2003 for SEIU's declining to represent her in yet another complaint. Applying the test for retaliation, plaintiff engaged in protected conduct by filing the complaint against SEIU. Even assuming *arguendo*, that SEIU's denial of representation in this action was an adverse action, plaintiff again has failed to show any causal connection between her protected conduct and denial of representation. As with her other claims, her argument is this: she made a complaint, she was later denied something, thus that denial must have been in retaliation for her complaint. She cannot even argue that timing indicates there was retaliation. She made the unfair practice complaint in 2003; SEIU denied her request for representation in 2006. Defendant SEIU has shown that there are no triable issues of fact with respect to plaintiff's claims, thus defendant's motion for summary judgment is **GRANTED**.

### CONCLUSION

For all the above-stated reasons, defendants' motions for summary judgment are **GRANTED**. Judgment shall be entered accordingly. Plaintiff is advised that she has the right to appeal to the Court of Appeals for the Ninth Circuit so long as she files a notice of appeal

within 30 days of the entry of judgment and dockets the appeal in accordance with that court's appellate rules and procedures.

**IT IS SO ORDERED.**

Dated: January 18, 2007

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE